UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| TIMOTHY NOLAN, | ) |
| Plaintiff, | ) Civil Action No. 3:19-CV-P935-CHB |
| v. | ) |
| DAWN PATTERSON *et al.*, | ) **MEMORANDUM OPINION** |
| Defendants. | ) **AND ORDER** |

This matter is before the Court on a motion filed by *pro se* Plaintiff Timothy Nolan to "vacate and/or amend" the Court's prior Memorandum Opinion and Order [R. 8], and Defendant Dawn Patterson's Motion for Entry of a Scheduling Order [R. 11]. For the following reasons Plaintiff's Motion and Defendant's Motion will be denied.

**I.**

Plaintiff seeks to "vacate and/or amend" the Court's prior Memorandum Opinion and Order under Federal Rule of Civil Procedure 59(e), in which the Court screened the complaint pursuant to 28 U.S.C. § 1915A and dismissed certain claims [R. 8]. The Court first observes that Plaintiff's motion is appropriately brought under Rule 54(b) of the Federal Rules of Civil Procedure, and not Rule 59(e), because Plaintiff is asking the Court to reconsider an interlocutory order. *See Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (citing *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469-70 (4th Cir. 1991)). Rule 54(b) provides, in part:

> [A]ny order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

"Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 F. App'x. at 959 (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998)). None of these justifications exist in the instant case.

## II.

### A. Classification Level

In the instant motion, Plaintiff first asks the Court to reconsider its dismissal of Plaintiff's individual-capacity claims against Defendants Plappert, Lembke, Bowersock, and Tracy, whom he alleges were involved in the misclassification of his custody level in violation of Kentucky Department of Corrections Policy and Procedures (CPP) 18.1 and 29.1, which are based upon Kentucky administrative regulations.

In its prior Memorandum Opinion and Order, the Court dismissed these claims because both the Supreme Court and the Sixth Circuit Court of Appeals have held that prisoners do not have a constitutional right to a particular classification under the Fourteenth Amendment. *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (explaining that prisoner classification and eligibility for rehabilitation programs are not subject to constitutional protections); *Griffin v. Kallen*, 791 F.2d 933, at *1 (6th Cir. 1986) (per curiam) (unpublished table decision) ("[A] prisoner has no constitutional entitlement to a particular classification or to any particular eligibility for rehabilitative programs.").

In his motion, Plaintiff argues that these claims were incorrectly dismissed in light of *Beard v. Livesay*, 798 F. 2d. 874 (6th Cir. 1986). In *Beard*, the court held as follows:

> A liberty interest protectible under the Fourteenth Amendment may arise only when implicated by the Constitution, or a state law or regulation. A prisoner has no inherent constitutional right to be housed in a particular institution, or to enjoy a particular security classification. Therefore, any liberty interest which exists in [a state's] reclassification process must be created by the state.
>
> A state, by its own actions, may create liberty interests protected by the due process clause . . . Prison officials may also create liberty interests by policy statements, regulations, or other official promulgations.

*Id*. at 876-77 (citations omitted).

*Beard*, however, was decided before *Sandin v. Conner*, 515 U.S. 472 (1995). In *Sandin*, the Supreme Court held that although the states may, under certain circumstances, create protected liberty interests through prison regulations, courts should no longer examine the language of prison regulations to determine whether such regulations place substantive restrictions on an official's discretion but rather should focus on whether the change in conditions of confinement presents an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484. Moreover, the *Sandin* court specifically held that a classification and security determination did not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*.; *see also Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) ("[A]n increase in security classification . . . does not constitute an 'atypical and significant' hardship in relation to the ordinary incidents of prison life because a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification.") (internal quotation marks and citation omitted).

In light of this jurisprudence, the Court concludes that its decision to dismiss Plaintiff's due process claims against Defendants Plappert, Lembke, Bowersock, and Tracy regarding his alleged misclassification was proper.

In the instant motion to reconsider, Plaintiff also makes an equal protection claim based upon these allegations for the first time. However, a Rule 54(b) motion "is not the appropriate mechanism to raise new allegations or legal theories." *Christmas v. Wexford Health Sources, Inc.*, No. 17-CV-1006-SMY-RJD, 2018 WL 784042, at *3 (S.D. Ill. Feb. 8, 2018).

**B. Program Participation**

Plaintiff also argues that the Court erred in dismissing claims against Defendants Plappert, Lembke, and Bowersock for refusing his request to participate in the Inside Out Dads program, thus precluding him from earning sentencing credits.

In its prior Memorandum Opinion and Order, the Court dismissed these claims for the same reasons it dismissed Plaintiff's claims related to his alleged misclassification. Specifically, the Court noted that prisoners have no constitutional right to be eligible for certain rehabilitation programs under the Fourteenth Amendment. *See Moody*, 429 U.S. at 88 n.9 (explaining that eligibility for rehabilitation programs is not subject to constitutional protections); *Carter v. Corections Corp. of Am.*, 187 F.3d 635, 1999 WL 427352 (6th Cir. 1999) (unpublished table decision) ("[P]risoners have no constitutionally cognizable right to rehabilitative programs.") (citations omitted); *Griffin,* 791 F.2d 933, at *1 ("[A] prisoner has no constitutional entitlement to a particular classification or to any particular eligibility for rehabilitative programs.").

In his motion to reconsider, Plaintiff argues that the above-named Defendants' actions violated his rights under Ky. Rev. Stat. § 197.045, the Kentucky good-time credit statute. However, the Sixth Circuit has specifically rejected the existence of a due process claim arising from allegations of failure to earn good-time credits in violation of § 197.045, explaining:

> As the Due Process Clause itself does not create a liberty interest in credit for good behavior, the question is whether the Kentucky statute creates such an interest. A Kentucky inmate possesses no inherent constitutional right . . . to accumulate good time credits. Furthermore, prison officials clearly have discretion under state law to

4

> deny a prisoner future good time. As there is no right to accumulate good-time credits, defendants did not commit a constitutional violation. Plaintiff's substantive due process rights were not violated because of his inability to accumulate good-time credits.

*Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (cleaned up); *see also Bell v. Kenney*, No. CV 20-164-DLB, 2020 WL 2309246, at *3-4 (E.D. Ky. May 8, 2020).

Thus, the Court concludes that it did not err in dismissing Plaintiff's claims based upon the alleged refusal of his request to participate in a rehabilitative program, thereby precluding him from earning sentencing credits under Ky. Rev. Stat. § 197.045.

### B. Access to LexisNexis

Finally, the Court turns to Plaintiff's argument that the Court should not have dismissed his individual-capacity claims against Defendants Moon, Plappert, Jordan, and Kenney since he alleged that they only allowed prisoners to access Lexis Nexis through a legal aide, instead of allowing them to conduct their own legal research, and that they did not provide prisoners sufficient time to use this limited resource.

In its prior Memorandum Opinion and Order, the Court construed this allegation as one based upon the denial of access to the courts. As such, it dismissed Plaintiff's claim because to succeed on such a claim, a prisoner must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a [non-frivolous] legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). In other words, a plaintiff must demonstrate an actual injury. *Id*. He must show, "for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Lewis v. Casey*, 518 U.S. at 356 (advising that no actual injury occurs without a showing that such a claim "has been lost or rejected, or that the presentation of such a claim is currently

being prevented"). The Court dismissed Plaintiff's claim because he had not alleged any injury to past or present litigation as a result of not having personal access to LexisNexis.

In his motion to reconsider, Plaintiff alleges for the first time that this "restrictive legal program" caused him to have two civil actions dismissed – one in the Eastern District of Kentucky and one in Campbell County Circuit Court. He also raises an equal protection claim based upon these allegations for the first time. As stated above, a Rule 54(b) motion "is not the appropriate mechanism to raise new allegations or legal theories." *Christmas*, 2018 WL 784042, at *3. Indeed, in *Christmas*, the court specifically noted that an amended complaint is "the correct method for raising new facts." *Id*. at n.1.

Thus, the Court concludes that it did not err in dismissing Plaintiff's claims based upon his restricted access to Lexis Nexis in light of the allegations set forth in the complaint.

### III.

Defendant filed a Motion for Entry of a Scheduling Order, explaining that "Plaintiff's failure to file his proposed Amend[ed] Complaint, despite being afforded ample time to do so, warrants entry of a Scheduling Order." [R. 11] Plaintiff had moved for an extension of time to file an amended complaint [R. 7], the Court granted the extension [R. 10], and Plaintiff filed his Amended Complaint [R. 12]. Defendant subsequently filed her Motion to Dismiss Plaintiff's Amended Complaint [R. 13]. Accordingly, Defendant's Motion seeking a scheduling order will be denied as moot.

***

Accordingly, for these reasons,

**IT IS ORDERED** as follows:

1. Plaintiff's Motion to Alter/Amend Judgment [**R. 8**] is **DENIED**.

2. Defendant's Motion for Entry of a Scheduling Order [**R. 11**] is **DENIED as moot**.

To the extent that Plaintiff seeks to assert new claims or make new allegations in this action, he should file a motion for leave to file an amended complaint with the proposed amended complaint attached.

This the 29th day of March, 2021.

*[Signature: Claria Horn Boom]*

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

cc: Plaintiff, *pro se*
   Counsel of record
A958.011